Melvin CONEY, Plaintiff,

v.

DEPARTMENT OF HUMAN RESOURCES OF the STATE OF GEORGIA, et al., Defendants.

Civ. A. No. 87–218–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

March 27, 1992.

---

Sands, Jordan & Adams, Mathis & Jordan, P.C., Milledgeville, Ga., for plaintiff.

Eddie Snelling, Jr., Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Melvin Coney ("plaintiff") filed the instant action on August 7, 1987, against the defendants, Georgia Department of Human Resources ("DHR"), the Commissioner of DHR, James G. Ledbetter ("Ledbetter"), and the Superintendent of Central State Hospital, Myers Kurtz ("Kurtz"), in both their individual and official capacities, under 42 U.S.C. § 1983, alleging that he was racially harassed in violation of the Equal Protection Clause of the Fourteenth Amendment. In addition, plaintiff also brought suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. §§ 1981 and 1985, alleging that he was subjected to a hostile working environment due to racial harassment and retaliated against for having filed race discrimination charges with the Office of Fair Employment Practices of the State of Georgia (the "OFEP"). Plaintiff seeks damages, injunctive, and declaratory relief. Before the court are cross motions for summary judgment filed by plaintiff and all defendants. After careful consideration of the relevant authority, the briefs filed by the parties, and the affidavits and depositions, the court hereby makes the following findings of undisputed material facts and conclusions of law.

## UNDISPUTED MATERIAL FACTS

1. Central State Hospital ("CSH"), an agency of the State of Georgia, hired plaintiff, a black man, on December 16, 1985, as a mechanic shop supervisor. It is stipulated that plaintiff was hired pursuant to a court order.[1] None of the mechanics who were already employed by DHR were considered for the position of mechanic shop supervisor, even though many applicants had several years experience. The mechanics, who were all white, acted resentful and hostile towards plaintiff when formally introduced.

2. In early 1986, plaintiff issued several written reprimands to the mechanics. One mechanic received at least five official reprimands in a one-month period. The reprimands, copies of which were sent to plaintiff's supervisors, complained of insubordination, harassment, and racially hostile conduct. Defendants did not institute disciplinary action against any of the mechanics.

3. Plaintiff began complaining of racial harassment at the mechanic shop shortly

1. In *Kennedy v. Crittenden,* CA 77–200–MAC, this court ordered the hiring of minorities at Central State Hospital.

after his arrival. The first recorded complaint was a memorandum to his managers dated May 1, 1986. (Def.Ex. 8). In that memorandum, plaintiff alleged that certain racially motivated incidents had occurred at the mechanic shop (plaintiff claimed his tires had been punctured, wrenches had been thrown at him, and a picture of a black male being hung had been left on his desk). Plaintiff did not know the identity of the perpetrator(s) of any of these alleged acts.

4. Defendants summoned the CSH Police Department and the Georgia Bureau of Investigation ("GBI") to conduct an investigation of plaintiff's allegations. Plaintiff and the mechanic shop employees were interviewed and given polygraph exams. The results of the investigation failed to substantiate plaintiff's allegations. (Def.Ex. 9).

5. Shortly thereafter, plaintiff raised new allegations concerning terroristic threats directed against Superintendent Kurtz by one of the mechanics. The CSH police and the GBI conducted another investigation; again, the results failed to substantiate plaintiff's allegations. (Def. Ex. 13).

6. On July 16, 1986, plaintiff filed with the OFEP charges of discrimination based on race and retaliation against DHR. (Def.Ex. 12). In his complaint, plaintiff claimed that his white supervisors had failed to address his grievances.[2] The OFEP notified DHR of plaintiff's claim in October of 1986. (Def.Ex. 12B). On March 4, 1987, the OFEP found reasonable cause to believe that plaintiff had been discriminated against.

7. In August of 1986, plaintiff's managers instituted a series of weekly meetings to discuss work-related problems. These meetings were held pursuant to plaintiff's suggestion, and after approximately seven months of holding these meetings, plaintiff himself requested that they be discontinued. (Def.Ex. 14).

8. In September of 1986, plaintiff contacted Commissioner Ledbetter at a black managers seminar, and informed him that certain alleged racial incidents were impairing his performance at the mechanic shop. (Plf.'s Dep. at 149; Ledbetter Dep. at 8). Ledbetter asked his assistant to investigate the matter.

9. In November of 1986, plaintiff met with Superintendent Kurtz to discuss the work environment of the mechanic shop and the lack of support plaintiff had received from management. (Plf's Dep. at 86; Kurtz Dep. at 10). Kurtz went to the mechanic shop, met with all of the mechanics, and informed them that:

> Mr. Coney was the supervisor of the mechanics, and that they had better follow his orders and instructions when he is carrying out his duties and responsibilities, whether they like him or not is immaterial, or what they think of him as a person is immaterial, but he is the supervisor, and he has my full backing. And if they do not follow his orders and instructions, that appropriate disciplinary action will be taken against them.

(Kurtz Dep. at 17).

10. Shortly thereafter, plaintiff raised new allegations concerning CSH improprieties by Meeks and another CSH supervisor. The CSH police conducted yet another investigation, which failed to substantiate any of plaintiff's claims. (Def.Ex. 17).

11. In January of 1987, plaintiff's immediate supervisor, Meeks, reprimanded plaintiff for failing to carry a paging device while on approved leave. (Def.Ex. 18). In accordance with DHR policies and procedures, plaintiff filed a formal complaint contesting the reprimand. (Def.Ex. 19A). Meeks later withdrew the written reprimand. (Def.Ex. 24).

12. In May of 1987, one of plaintiff's employees quit his job as Senior Mechanic after complaining about a job assignment from plaintiff. (Coney Dep. at 120; Meeks Dep. at 40). A CSH supervisor placed the employee on annual leave without pay.

---

**2.** Plaintiff did acknowledge, however, that Kurtz had visited the mechanic shop and addressed plaintiff's complaints.

Meeks advised plaintiff to initiate some type of adverse action against the employee when the employee returned two weeks later. (Meeks Dep. at 46). A series of letters were exchanged between plaintiff and Meeks regarding the disciplinary action of the employee. (Def.Ex. 21A–E). Plaintiff refused to recommend adverse action or participate in a disciplinary hearing against the employee.[3] Meeks eventually issued a written reprimand to plaintiff for failing to discipline an employee who left the mechanic shop without permission. (Def. Ex. 23).

13. In July of 1987, the CSH police carried out a fourth investigation pursuant to plaintiff's allegations (on this occasion, plaintiff claimed that an outside auto refurbisher was bribing CSH employees). (Def.Ex. 21E; Ex. 22). The investigation did not substantiate the charges.

14. Plaintiff sustained an on-the-job injury on February 15, 1988. Plaintiff requested and received time off to recover. By February 25th, plaintiff had used all of his accrued leave. Plaintiff was given leave without pay from February 25th to March 2nd. From March 2–9, 1988, plaintiff failed to report to his supervisors. By letter of March 9th, plaintiff was informed that he was being terminated because he had voluntarily abandoned his position.[4] (Def.Ex. 25). Plaintiff appealed his dismissal to a State Personnel Board, which affirmed the decision to terminate. (Def.Ex. 25C).

15. On May 8, 1987, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter to plaintiff, who then made a timely filing of his complaint in this court.[5] DHR is an "employer" within the definition of 42 U.S.C. § 2000e(b).

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure allows for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The movant bears the initial burden of proving that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant may satisfy this burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986).

If this burden is met, the nonmovant must offer evidence to establish that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2554, 91 L.Ed.2d at 274. When evaluating the summary judgment motion, the court views the evidence and all factual inferences in the light most favorable to the nonmoving party. *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984).

Plaintiff has raised several causes of action in his complaint. The court will address each of these separately.

## I. 42 U.S.C. § 1981

Plaintiff contends that the alleged discriminatory and hostile work environment

---

3. Plaintiff refused to prosecute adverse action against the employee because he believed that his supervisors, who allowed the employee to use his annual leave to reconsider his resignation, were protecting the employee.

4. The CSH policy guide states that any employee absent from duty for five consecutive work days without proper notification and authorization may be deemed to have resigned voluntarily from his position. (Def.Ex. 5).

5. Plaintiff has raised allegations of retaliatory discharge in his motion for summary judgment. Plaintiff did not raise this claim before the OFEP or in his complaint, nor has plaintiff sought leave to amend his complaint. The Eleventh Circuit has stated that "the scope of a judicial complaint is defined by the scope of the EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir.1988) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). Because plaintiff's claim of retaliatory discharge could be expected to grow out of his original charges of retaliation and discrimination, the court will allow plaintiff to litigate his additional allegations.

serves as a basis for an action pursuant to 42 U.S.C. § 1981. Section 1981 provides, in pertinent part, that "all persons ... shall have the same right ... to make and enforce contracts."

 Defendants argue that plaintiff's § 1981 claim is meritless in light of the United States Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson*, the Court stated that

the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Id.* at 177, 109 S.Ct. at 2373, 105 L.Ed.2d at 150–51. Therefore, once the employment contract has been entered into, racial discrimination claims are no longer cognizable under § 1981. *See also Busby v. City of Orlando*, 931 F.2d 764, 771 n. 6 (11th Cir. 1991). Plaintiff's claims were for racial harassment and discrimination during his employment at Central State Hospital. Because the alleged discriminatory conduct "relates not to [his] employer's refusal to enter into a contract with [him], but rather to the conditions of [his] employment" after formation of the contract, such a claim is not actionable under § 1981. *Patterson*, 491 U.S. at 184–85, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. *See also Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1520 (11th Cir.1991). Accordingly, the court DENIES plaintiff's summary judgment motion and GRANTS defendants' summary judgment motion under § 1981.

**6.** Plaintiff must show defendants acted with purpose or intent in proving an equal protection

## II. 42 U.S.C. § 1983

 Plaintiff also alleges that defendants violated 42 U.S.C. § 1983. Section 1983 provides, in pertinent part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

To state a claim under § 1983, a plaintiff must allege that he has been deprived of a federal right by one acting under color of state law. In the instant case, plaintiff alleges that he was subjected to harassment in violation of the Equal Protection Clause of the Fourteenth Amendment.[6]

### a. DHR

[5, 6] The Department of Human Resources has raised the affirmative defense of state sovereign immunity. The Eleventh Amendment bars suits against a state or its agencies in federal court. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). DHR is an agency of the State of Georgia, and is therefore immune from plaintiff's § 1983 claim. Consequently, the court hereby GRANTS DHR's motion for summary judgment on the basis of Eleventh Amendment immunity.

### b. Ledbetter and Kurtz, in their Official Capacities

 Ledbetter and Kurtz, as state officials, raise the Eleventh Amendment as a defense to plaintiff's § 1983 claim. A suit against a state officer in his official capacity, to the extent plaintiff seeks monetary relief, is in reality a suit against the State and therefore barred by the Eleventh Amendment. *Edelman v. Young*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Consequently, plaintiff is barred from suing Ledbetter and Kurtz, in their official

violation. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir.1991).

capacities, for retrospective relief. The court, therefore, GRANTS Ledbetter and Kurtz's motion for summary judgment on the basis of Eleventh Amendment immunity.

■■ The Eleventh Amendment does not, however, act as a bar to suits against state officials to the extent injunctive relief is sought for ongoing violations of federal law. *Papasan v. Allain,* 478 U.S. 265, 276–78, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209, 225–27 (1986). In the instant case, plaintiff does not complain of ongoing violations, but rather of violations "over a period of time in the past." *Id.* at 278, 106 S.Ct. at 2940, 92 L.Ed.2d at 227. Plaintiff, therefore, is barred from seeking injunctive relief against Ledbetter and Kurtz, as state officers, for past violations. Consequently, the court GRANTS Ledbetter and Kurtz's summary judgment motion.

### c. Ledbetter and Kurtz, in their Individual Capacities

Plaintiff also seeks monetary relief against Kurtz and Ledbetter in their individual capacities. Kurtz and Ledbetter have raised the affirmative defense of qualified immunity.

■■ Qualified immunity shields all government officials from liability for damages in a § 1983 action "insofar as their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once defendants raise the defense of qualified immunity, the burden shifts to plaintiff to identify the clearly established law and adduce evidence sufficient to create a genuine issue of fact as to whether defendants' conduct violated clearly established law. *Nicholson v. Georgia Dep't of Human Resources,* 918 F.2d 145, 147 (11th Cir.1990) (citing *Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1503 (11th Cir.1990)).

Ledbetter and Kurtz allegedly violated plaintiff's equal protection right to be free from racial harassment. At the time of plaintiff's employment at CSH, several courts had established that harassment by a government employer violates the Equal Protection Clause. *See, e.g., Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir.1986) (sex harassment); *Gobla v. Crestwood School Dist.,* 609 F.Supp. 972, 978–79 (M.D.Pa.1985) (sex harassment). Courts considering the issue of supervisory liability have concluded that a supervisor could be held liable for actively participating in or authorizing the misconduct of another. *See, e.g., Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982); *Howell v. Tanner,* 650 F.2d 610 (5th Cir. Unit B 1981). No liability, however, could be imposed under § 1983 for merely failing to supervise or control one's employees. *Rizzo v. Goode,* 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976).

■■ In the instant case, plaintiff makes no allegation of any affirmative misconduct by Ledbetter and Kurtz. Plaintiff has presented no evidence that would even support an inference that Ledbetter or Kurtz actively participated in, directed, or authorized any harassment. Indeed, plaintiff acknowledges that on several occasions those officials attempted to assist him. The gravamen of plaintiff's complaint is that his supervisory defendants failed to take appropriate corrective action. As stated above, liability cannot be imposed under § 1983 for administrative negligence. Therefore, Ledbetter and Kurtz's motion for summary judgment is hereby GRANTED. Plaintiff's motion for summary judgment is DENIED as to all § 1983 claims.

### III. 42 U.S.C. § 1985

■■ To establish a § 1985 claim, a plaintiff must allege that a conspiracy deprived him of equal protection of the laws or of equal privileges and immunities under the laws. *Great Am. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957, 964 (1979). A violation of the rights created by Title VII cannot form the basis for a § 1985 action. *Id.* at 378, 99 S.Ct. at 2352, 60 L.Ed.2d at 968. Plaintiff's complaint only raises alle-

gations of employment discrimination. Plaintiff has not presented any evidence of the type of conspiracy required by *Novotny*. Consequently, the court DENIES plaintiff's summary judgment motion and GRANTS defendants' summary judgment motion as to the § 1985 claim.

## IV. Title VII

### a. Retaliation

 Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge ... under this subchapter." 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation in violation of Title VII, the plaintiff must show that: (1) he engaged in a protected activity; (2) he was subsequently subjected to adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. *Doyal v. Marsh,* 777 F.2d 1526, 1534 (11th Cir.1985). Plaintiff has alleged three instances of retaliatory conduct on the part of defendants. If the plaintiff satisfies his *prima facie* case as to each of these instances, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the business decision. If the defendant meets this burden, the burden then shifts back to the plaintiff to establish pretext.

 First, plaintiff claims that defendants altered his job description and duties in retaliation for having filed a complaint with the OFEP. Specifically, plaintiff complains that he was required to deliver parts from the parts room to the mechanics, a duty which was not in his job description. However, plaintiff's job description includes a provision stating his work included "any other duties as assigned...." (Def.Ex. 1C). Furthermore, the court questions whether an additional job assignment constitutes an adverse employment action. The court concludes that plaintiff has failed to establish his *prima facie* case in this instance and, therefore, DENIES plaintiff's motion for summary judgment

and GRANTS defendants' motion for summary judgment.

 Second, plaintiff contends that defendants' retaliatory conduct consisted of wrongful disciplinary action against him. Plaintiff, however, failed to specify in his complaint and pleadings which disciplinary action was wrongful. The court could only find two instances where plaintiff had been disciplined. The first instance occurred in January of 1987 (see finding of fact 10, *supra*). A written reprimand, which was later rescinded, merely warned plaintiff that his failure to carry out his assigned duties would not be tolerated in the future. The court finds that a nonthreatening written reprimand, which is later removed from an employee's personnel file, is not an adverse employment action. *Accord Rivers v. Baltimore Dep't of Recreation & Parks,* 51 Fed.Empl.Prac.Cas. (BNA) 1886, 1894, 1990 WL 112429 (D.Md.1990) (letter placed in personnel file that does not threaten employee with any form of discipline did not constitute adverse employment action). Consequently, the court concludes that plaintiff has not satisfied his *prima facie* case as to that action. The second instance occurred in August of 1987 (see finding of fact 11, *supra*). Even if plaintiff has established his *prima facie* case, defendants have articulated a legitimate, nondiscriminatory reason for reprimanding plaintiff. According to CSH guidelines, disciplinary actions are to be implemented by the affected employee's immediate supervisor (plaintiff). Plaintiff refused to recommend appropriate disciplinary action for the employee because of his belief that a cover-up existed. However, plaintiff relies solely on conclusory allegations. The court finds that plaintiff has failed to offer any evidence to demonstrate that his own disciplinary action was a pretext for retaliatory behavior, and, therefore, DENIES plaintiff's motion for summary judgment and GRANTS defendants' motion for summary judgment as to this retaliation claim.

 Finally, plaintiff argues that he was discharged in retaliation for having filed discrimination charges with the

OFEP. The court questions whether a causal connection exists between the protected act (plaintiff filed his complaint in July, 1986) and the adverse employment action (plaintiff was terminated in March, 1988). Even assuming that there is a causal link and plaintiff establishes his *prima facie* case, defendants provided a legitimate, nondiscriminatory reason for the discharge. Plaintiff exhausted his accrued leave, failed to contact his supervisors, and continued to stay away from work. Under the terms of the CSH policy guide, plaintiff was deemed to have voluntarily abandoned his position as mechanic shop supervisor. The court finds that plaintiff has not offered any evidence to prove that his termination was a pretext for retaliatory behavior and, therefore, DENIES plaintiff's motion for summary judgment and GRANTS defendants' motion for summary judgment as to this retaliatory discharge claim.

### b. Racial Harassment/Hostile Work Environment

■ Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). This section prohibits an employer from maintaining a hostile work environment. To establish a Title VII violation based on hostile work environment, a plaintiff must show that his employer "creat[ed] or condon[ed] an environment at the workplace which significantly and adversely affects an employee because of his race or ethnicity...." *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir.1982) (sex discrimination). Plaintiff alleges that the following acts created a hostile working environment: thrown wrenches directed at plaintiff; punctured tires on plaintiff's automobile; picture of black male being lynched left on plaintiff's desk; threats; racial slurs and jokes[7]; insubordination; and profanity.

■ To prove his *prima facie* case of hostile working environment racial harassment, plaintiff must establish that: (1) he belongs to a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) *respondeat superior*. *Henson*, 682 F.2d at 903–05.

■ Plaintiff clearly belongs to a protected class. In proving the second element of his *prima facie* case, that the racial harassment was unwelcome, plaintiff must show that he "did not solicit or incite it, and .... that [he] regarded the conduct as undesirable or offensive." *Id.* at 903. Plaintiff has presented sufficient facts to allow a trier of fact to conclude that plaintiff was subjected to unwelcome racial harassment. Furthermore, the court finds that a fact finder could rationally conclude that but for the fact plaintiff was black, he would not have been the object of harassment by his co-workers.

■ To satisfy the fourth element of his *prima facie* case, plaintiff must show that the harassment was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Id.* at 904. This is "a question to be determined with regard to the totality of the circumstances." *Id.* Plaintiff claims that the alleged racial harassment impaired his job performance, and caused him mental pain, anguish, and humiliation. The court concludes that the evidence is sufficient to support an inference that the alleged harassment altered the conditions of employment and created an abusive working environment.

Under the final element, plaintiff must show that his employers knew or should have known of the harassment and failed to take prompt, effective remedial action. *Id.* at 905. It is undisputed that defendants were aware of plaintiff's harassment claims. By plaintiff's own admissions, defendants took prompt action in response to

---

7. Plaintiff claims the mechanics referred to him as "nigger," "sheep-headed nigger," and "black son of a bitch."

**1444**

plaintiff's claims. Defendants promptly summoned the GBI to investigate all plaintiff's allegations; defendants instituted a series of weekly meetings to enable the mechanics to voice their work-related problems; and on one occasion, Superintendent Kurtz lectured the mechanics about their use of profanity, threats, and other remarks that promoted a poor work environment. Despite these remedial actions, plaintiff contends the alleged harassment continued.

 Plaintiff argues that defendants' actions were not effective or adequate, and points out that defendants failed to discipline even one employee for acts of racial hostility, notwithstanding their awareness of said acts. Furthermore, the evidence does not reveal whether the weekly meetings were structured to address or correct the racially hostile conduct of the mechanics. The court concludes that plaintiff has raised a genuine issue of material fact as to whether defendants' responses to plaintiff's racial harassment claims were adequate and effective enough to avoid liability under Title VII. Accordingly, the court hereby DENIES both plaintiff's and defendants' motions for summary judgment on the issue of hostile work environment due to racial harassment. A nonjury trial will be held solely on this issue in the near future.

### CONCLUSION

Plaintiff's motion for summary judgment is DENIED as to all claims. Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The court GRANTS defendants' motion for summary judgment as to plaintiff's § 1981, § 1983, § 1985, and Title VII retaliation claims. Defendants' summary judgment motion as to the Title VII hostile work environment claim, however, is DENIED.

SO ORDERED.