**Patricia L. LEE, Plaintiff,**

v.

**MOBILE COUNTY COMMISSION consisting of Sam Jones, Gary Tanner and Freeman Jockisch, Defendants.**

**Civil Action No. 94–0506–BH–M.**

United States District Court,
S.D. Alabama,
Southern Division.

Oct. 10, 1995.

Affirmed by 103 F.3d 148.

Larry C. Moorer, Mobile, AL, for plaintiff.

Wade B. Perry, Jr., Mobile, AL, Tracy P. Turner, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, for defendant.

## FINDINGS OF FACT; CONCLUSIONS OF LAW AND ORDER

HAND, Senior District Judge.

This action is before the court on defendant's motion for summary judgment (Tab 15). In her complaint, plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983 for discriminating against her on the basis of her race, sex and/or retaliating against her for filing an EEOC complaint. For the reasons set forth below, the court concludes that no issues of material fact exist and that the defendant is entitled to judgment as a matter of law.

## FINDINGS OF FACT

Upon consideration of defendant's motion and plaintiff's response in opposition thereto and based upon the pleadings, exhibits, affidavits and other evidence of record, the court makes the following findings of fact:

1. In 1987, plaintiff Patricia L. Lee (Lee) became employed with the Mobile County Commission, through the Mobile County Personnel Board, as a security guard. As a security guard, Lee served as a bailiff for the County Commission meetings and generally patrolled the courthouse grounds.

2. On or about August 9, 1990, Lee resigned her merit system security guard position to accept a court security position as a "confidential employee" of the Presiding Judge of the Thirteenth Judicial Circuit, the Honorable Braxton L. Kittrell, Jr. This was a newly created position and Lee's annual salary was to be $16,332.00.

3. At the time of Lee's hiring as a "confidential employee" of Judge Kittrell, two other individuals were already employed as "confidential employees" in court security, Joel Singleton and A.L. Whitfield. Singleton and Whitfield were hired by Judge Kittrell in such positions on April 9 and April 24, 1990, respectively. Singleton, Whitfield and Lee each started work at the same salary, namely $16,332.00.

4. In April, 1991, two other individuals, James L. Huey and Derek Norwood, were hired by Judge Kittrell as "confidential employees" in court security with starting salaries of $16,332,00. Approximately six months later, in October 1991, Huey was

promoted to the position of head of court security with a corresponding raise in pay to $22,992.00. In October and November of 1991, Singleton, Whitfield and Lee each received raises to salaries of $17,965.00 and thus received the highest salaries of any "confidential Employee" other than Huey who was head of security.

5. In April, 1992, Huey and Norwood received a 5% merit increase which increased their salaries to $24,141.60 and $18,006.00, respectively. Neither Lee nor either Singleton or Whitfield, both black males, received any salary increase at this time. In October, 1992, all five of these "confidential employees" received a 5% cost of living raise. This raise resulted in Norwood receiving a $42.84 a year higher salary than Singleton, Whitfield and Lee. This salary discrepancy was brought to the attention of Judge Kittrell during the summer of 1993, whereupon it was equalized by letter dated September 13, 1993. For the entire period of time in which security officer Norwood received a higher salary than Singleton, Whitfield and Lee, the total salary discrepancy amounted to roughly $66.84.

6. During 1992, the court security positions were merged into the Community Corrections Center, an office created pursuant to *Acts of Alabama*, Act No. 91–647. This Act provided that the Presiding Circuit Judge of the Thirteenth Judicial Circuit was charged with the authority of employing and dismissing personnel necessary to carry out the provisions of the Act. Thus Judge Kittrell has the power to direct, supervise and fix salaries for all personnel under the Community Corrections Center, including court security officers.

7. At no time did the Mobile County Commission have or exercise any authority to hire, fire, demote, transfer or set any terms and conditions of employment for any "confidential employees" of the Community Corrections Center. At all times the authority granted by Act No. 91–647 was exercised solely by Judge Kittrell.

8. Upon the merger of court security into the Community Corrections Center, the job duties of all court security officers changed in that all court security officers were re-quired at one time or another to man duty stations at both the courthouse and the Community Corrections Center. Shortly after the merger, at or about the time Robert J. Moore was appointed director of the Community Corrections Center, the job description for all court security officers was basically the same.

9. On or about March 15, 1993, shortly after Moore became director of the Community Corrections Center, the decision was made that all court security officers were to rotate through the separate duty stations. At no time did the Mobile County Commission make the decision to rotate court security officers or how such officers were to be rotated. Moreover, at no time did any member of the Mobile County Commission receive a copy of the court security officers rotation schedule. Between April, 1993, when rotation officially began, and July 1, 1994, all court security officers employed by Judge Kittrell rotated duty stations at least once.

10. At the time of the merger and the appointment of Moore as director of the Community Corrections Center by Judge Kittrell, court security had access to four vehicles plus a van for its use. The director and chief of security, because of their supervisory positions, had access to two of these vehicles to travel to and from work. The security officer assigned the duty of opening and closing the Community Corrections Center also had access to a vehicle to travel to and from work. During most relevant times, Norwood was the officer who opened and closed the center and thus had access to a vehicle. However, during the months of May and June, 1993, when Norwood was in training with the Prichard Police Academy, both Lee and Margaret Spencer were assigned to open and close the Center with accompanying access to either an automobile or the van for transportation to and from work. Finally, court security officer Warb Matthews had access to a County vehicle to travel to and from work because he served warrants and writs after hours. Lee has presented no evidence that she was treated differently than any other similarly situated employee

with respect to the vehicles assigned to the Community Corrections Center.

11. On or about July 30, 1993, Lee was involved in a meeting with director Moore and chief of security Huey in Moore's office at the Community Corrections Center. The discussions at this meeting concerned many, if not all, the items listed in Lee's complaints to the EEOC. At no time before or after this meeting was Lee fired, demoted, transferred, suspended either with or without pay or did she receive any type of written reprimand.

12. On or about February 28, 1992, Lee completed the Alabama Peace Officers Standards and Training Course. Later in 1992, Judge Kittrell requested a special 5% merit increase for Lee based on her successful completion of this course. However, pursuant to long standing policy, no such special merit increase was approved for the Circuit Court budget. This policy of not paying special merit increases for receipt of specialized training was applied evenly across the board to all agencies and employees in Mobile County. Lee has presented no evidence that any other employee was treated any differently.

13. On at least one occasion during her employment as a court security officer, Lee failed to receive any compensatory time or credit for working overtime. On the occasion in question, both Lee and a black male security officer, Katonio Tricksey, failed to receive such overtime credit for work in Judge Johnstone's courtroom because they neglected to follow the court security officer procedures regarding overtime. Specifically, they failed to comply with the requirement that they notify someone at the Community Corrections Center by phone or radio if it appeared they were going to have to work overtime.

14. To the extent Lee alleges that she and no other employee was ordered to remove personal items from the workplace, Lee has presented no evidence that any other employee maintained such personal items at the workplace and was thus treated any differently.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 1331 and 1343.

2. In order to succeed on her equal protection claim under § 1983, Lee must prove by a preponderance of the evidence that she was discriminated against because of her race or sex. *See e.g., Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987), *citing, Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984). *See also, Pilditch v. Board of Education of the City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993). In order to succeed against a governmental entity such as the Mobile County Commission, Lee must allege and prove that an agent of that entity violated her constitutional rights while acting under color of state law and was responsible for establishing final governmental policy with respect to the particular activity in question. *See e.g., Kubany v. School Board of Pinellas County,* 818 F.Supp. 1504, 1507 (M.D.Fla.1993), *citing, Arnold v. Board of Education of Escambia County, Alabama,* 880 F.2d 305, 315–16 (11th Cir.1989).[1] Lee must also allege and prove that the acts complained of were in furtherance of or amounted to an official policy or custom of the Mobile County Commission. *Id.*

3. Where there is no direct evidence of discrimination, as in the present case, Lee must make out a prima facie case by utilizing the *McDonnell–Douglas* formula in connection with not only her Title VII claim but her § 1981 and § 1983 claims as well. *See, Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994); *Pilditch,* 3 F.3d at 1116. Specifically, Lee must proffer sufficient evidence to prove:

   a. She is a member of a protected class;

   b. She suffered or received an adverse employment action or decision;

---

1. In *Arnold v. Board of Education of Escambia County, Alabama,* 880 F.2d 305, 316 (11th Cir. 1989), the Eleventh Circuit stated that "[e]ven a policymaker's ability to exercise discretion when performing certain functions alone does not give rise to local government liability based on an exercise of that discretion."

c. A person outside the protected class did not receive the adverse employment action at issue; and

d. The adverse employment action was causally related to Lee's status as a member of the protected class.

*See e.g., Jones v. Firestone Tire and Rubber Co., Inc.,* 977 F.2d 527, 537–38 (11th Cir. 1992); *Pace v. Southern Railway System,* 701 F.2d 1383, 1386 (11th Cir.1983); *Prince v. United Parcel Service,* 845 F.Supp. 835, 840 (M.D.Ala.1993); *Peden v. Suwannee County School Board,* 837 F.Supp. 1188 (M.D.Fla.1993). Only if Lee meets her burden, will the defendant be required to articulate a genuine, non-discriminatory reason for the action taken. *See, St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 416 (1993). This "exceedingly light" burden on the defendant, however, is one of production and not persuasion. *See e.g., Smith v. Horner,* 839 F.2d 1530, 1537 (11th Cir.1988). The ultimate burden remains on the plaintiff to prove the existence of purposeful discrimination by a preponderance of the evidence. *St. Mary's,* 509 U.S. at 506–513, 113 S.Ct. at 2747–2750. *See also, Earley v. Champion International Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990); *Jones v. Gerwens,* 874 F.2d 1534, 1538–39 (11th Cir. 1989).

■ 4. If the defendant has articulated a legitimate, non-discriminatory reason for the action taken, the plaintiff must either establish that the articulated reason was merely a pretext for discrimination or that the alleged discriminatory reasons nonetheless motivated the defendant to take the action. *Id. See also, Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir.1991); *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1445 (11th Cir.1985). The Supreme Court has recently held that, even if the plaintiff shows that the defendant's legitimate, non-discriminatory reason is proven to be a pretext, this is not sufficient for plaintiff to prevail but may support an inference that the real reason for the employment action is discriminatory. *St. Mary's,* 509 U.S. at 510–511, 113 S.Ct. at 2749. *See also, Pilditch,* 3 F.3d at 1116.

■ 5. Assuming Lee may state a claim for retaliation under § 1983, the same *McDonnell–Douglas* formula is applicable to such claim as well as to Lee's Title VII claim. *Turnes,* 36 F.3d at 1060; *Pilditch,* 3 F.3d at 1116. In order to establish a prima facie case of retaliation, whether under Title VII or § 1983, Lee must establish: 1) that she engaged in a statutorily protected activity; 2) that she suffered an adverse employment action; and 3) that there is some causal connection between the two events. *See e.g., Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Clemons v. Hardee County School Board,* 848 F.Supp. 1535, 1538 (N.D.Fla.1994).

■ 6. Under Title VII, Lee may only prevail against an "employer" who intentionally engaged in or is intentionally engaging in an unlawful employment practice. *Goldsmith,* 996 F.2d at 1162. For Title VII purposes, such an employer must be an individual or entity who extends a certain degree of control over the plaintiff. *See e.g., Magnuson v. Peak Technical Services, Inc.,* 808 F.Supp. 500, 507 (E.D.Va.1992). A determination of whether a defendant is an "employer" subject to liability under Title VII requires an examination of defendant's role with respect to the right to hire, fire, transfer, promote, discipline, set the terms, conditions and privileges of employment, train and pay the plaintiff. *See e.g., Ryals v. Mobile County Sheriff's Department,* 839 F.Supp. 25, 26 (S.D.Ala.1993) ("Factors in determining whether separate entities exercise indicia of control and are thus joint employers includes whether the separate entities share or control certain aspects of the employee's employment such as (1) the authority to hire, transfer, promote, discipline or discharge; (2) the authority to establish work schedules or direct work assignments; or (3) the obligation to pay or the duty to train the employee."); *Magnuson,* 808 F.Supp. at 507 ("In order to be subject to liability under Title VII, a defendant must (1) fall within Title VII's statutory definition of "employer," and (2) have exercised substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment."); *Foster v. Township of Hillside,* 780 F.Supp 1026, 1038, n. 4 (D.N.J.

1992). Of these factors, the extent of the defendant's right to control the means and manner of the workers' performance is the most important. *Magnuson,* 808 F.Supp. at 509. Simply because an entity such as the Mobile County Commission is required under state law to pay the salaries of employees does not mean that such entity is the employer of those employees for purposes of liability under Title VII. *Ryals,* 839 F.Supp. at 26 (Mere fact that the County Commission cut the deputies' paychecks from funds annually budgeted for the Sheriff's Department did not mean that the Commission was the deputies' employer for Title VII purposes.); *Hall v. Delaware Council on Crime & Justice,* 780 F.Supp. 241, 245 (D.Del.1992) ("[T]he funding of [any] non-profit organizations by the United Way does not justify the conclusion that the organizations are a single employer for the purposes of Title VII."); *Warren v. Stone,* 751 F.Supp. 1302, 1304 (M.D.Ill.1990) ("While Cook County is required to pay the salaries of employees of the Public Defender, ... the County serves no other role in their employment.").

■ 7. Lee has presented no evidence to establish that the Mobile County Commission is her "employer" as that term is defined under Title VII. The Mobile County Commission had no authority to hire, fire, transfer, promote, discipline, set terms, conditions and privileges of employment, or train Lee. The mere duty to pay Lee's salary through the budgeting of funds for the Circuit Court does not mean that Lee is deemed an employee of the Mobile County Commission for liability purposes under Title VII.

■ 8. Likewise, for purposes of § 1983 and § 1981, the Presiding Judge of the Thirteenth Judicial Circuit, Judge Kittrell, is not a final policy making authority for Mobile County. Consequently, no liability may be established against Mobile County for his acts. *See e.g., Swint v. City of Wadley, Alabama,* 5 F.3d 1435, 1450 (11th Cir.1993) (Sheriff held to be acting for State, not County, with respect to law enforcement decisions); *Society of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1215 n. 31 (5th Cir.1991) (Judge held to be acting for State, not County, with respect to personnel decisions);

*Warren,* 751 F.Supp. at 1304 (Defendant held to be employee of State, not County, with respect to the alleged conduct).

■ 9. Even if the Mobile County Commission was deemed to be Lee's employer and Judge Kittrell was deemed to possess final policy making authority for Mobile County with respect to the "confidential employees," Lee has failed to establish that she suffered at any time an adverse employment action or decision. *See, McCabe v. Sharrett,* 12 F.3d 1558, 1563 (11th Cir.1994) ("For a public employee to establish that an employment action has infringed a constitutional right the employee also must demonstrate that he or she has suffered some sort of adverse employment action for exercising the right."); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 456–58 (7th Cir.1994) ("[A]n ADEA plaintiff does not establish a prima facie case by showing only that a job transfer would cause personal inconvenience or altered job responsibilities."). *See also, Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994); *Ward v. Johns Hopkins University,* 861 F.Supp. 367, 377 (D.Md.1994). In contrast, the undisputed evidence establishes that, during the entire period of her employment, Lee has never been fired, demoted, transferred, suspended either with or without pay, reprimanded in writing or assigned to any unpleasant work station that no other court security officer was required to man. Lee has not, therefore, suffered an adverse employment action. *See, Raley v. Board of St. Mary's County Commissioners,* 752 F.Supp. 1272, 1281 (D.Md.1990); *Lucas v. Cheney,* 821 F.Supp. 374, 375–76 (D.Md.1992); *Coney v. Department of Human Resources of the State of Georgia,* 787 F.Supp. 1434, 1442 (M.D.Ga.1992); *Murphy v. Yellow Freight Systems, Inc.,* 832 F.Supp. 1543, 1549–51 (M.D.Ga.1993); *Foster,* 780 F.Supp. at 1041–44. Lee also failed to establish that she was treated any differently than similarly situated black male court security officers. Consequently, Lee cannot establish a prima facie claim of race or sex discrimination. *See e.g., Prince v. United Parcel Service,* 845 F.Supp. 835, 840–41 (M.D.Ala.1993); *Foster,* 780 F.Supp at 1043.

10. Even if it could be said that Lee met her burden with respect to a prima facie case, Lee failed to establish that defendant's stated non-discriminatory reasons for the actions taken were unworthy of credence and merely a pretext for racial and/or sexual discrimination. Lee has presented no evidence from which a reasonable jury could find either that defendant's actions were discriminatory or that defendant's stated reasons were a pretext for discrimination. There is simply no evidence in the record which raises a question of fact sufficient to deny defendant's motion for summary judgment. *See e.g., Earley,* 907 F.2d at 1084 n. 5, *citing, Pace v. Southern Railway System,* 701 F.2d 1383, 1391 (11th Cir.), *cert. den.,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Lee's conclusory allegations of discrimination, without more, are insufficient to raise an inference of pretext or intentionally discriminatory conduct. *See e.g., Meiri v. Dacon,* 759 F.2d 989, 998 (2nd Cir.1985) (conclusory allegations of discrimination held insufficient to raise inference of pretext and thereby defeat a summary judgment motion.).

### CONCLUSION AND ORDER

For the reasons stated above, the court concludes that there exists no material issue of fact and defendant is entitled to judgment as a matter of law. It is therefore **ORDERED** that defendant's motion for summary judgment be and is hereby **GRANTED** and that judgment be entered in favor of the defendant, the Mobile County Commission consisting of Sam Jones, Gary Tanner and Freeman Jockisch, and against the plaintiff, Patricia L. Lee, the plaintiff to have and recover nothing of the defendant. Costs are taxed against the plaintiff.