Annalee R.M. BLOOM et al., Plaintiffs,

v.

David W. CROOK et al., Defendants.

Civil No. 99–CV–219–B.

United States District Court,
D. Maine.

Dec. 10, 1999.

Brett D. Barber, Rudman & Winchell, LLC, Bangor, ME, for plaintiff.

Leanne Robbin, Assistant Attorney General, Augusta, ME, for defendant State of Maine.

William R. Fisher, Portland, ME, for defendants Crook & Fowle.

## ORDER AND MEMORANDUM

BRODY, District Judge.

Plaintiff, Annalee R.M. Bloom ("Bloom"), worked as an assistant district attorney under Defendant David W. Crook ("Crook"), the District Attorney for Kennebec and Somerset Counties, and Defendant Evert N. Fowle ("Fowle"), the First Assistant District Attorney who was Bloom's immediate supervisor. In response to alleged discrimination in her employment and ultimate dismissal, Bloom and her husband, Lawrence P. Bloom, filed various claims against these two defendants. Bloom also filed three claims against the state of Maine. Specifically, in Counts II, III, and IV of her complaint, Bloom alleges that Crook and Maine discriminated against her on the basis of her sex and religion in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.* Before the Court is Maine's Motion to Dismiss these allegations against it under Fed.R.Civ.P. 12(b)(6).

## STANDARD

When faced with a Motion to Dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), the Court views all of the plaintiff's factual averments as true and indulges every reasonable inference in the plaintiff's favor. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). The Court may grant a defendant's Motion to Dismiss "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir. 1990).

## STATUTORY FRAMEWORK

In order for Maine to be liable under Title VII and the Maine Human Rights Act, the Court must first find that Maine was Bloom's employer. The statutes governing the power of District Attorneys ("DAs") and the Attorney General provide insight into this inquiry. Under Maine law, "district attorneys and assistant district attorneys designated as full-time assistants are full-time officers of the State." 30–A M.R.S.A. § 256. DAs appoint assistant district attorneys ("ADAs"), who "serve at the district attorney's will." *Id.* § 272(1). Along with this power to hire and fire, DAs also fix the compensation of ADAs, subject to the approval of the Attorney General and the Governor. *Id.* § 272(3). State legislative appropriations fund these salaries. DAs are elected in Maine, and are subject to removal by means other than the ballot box only when a majority of Justices of the Maine Supreme Court, upon a complaint filed by the Attorney General, find that certain conditions justifying removal are satisfied. *Id.* § 257. Finally, although not necessarily related to personnel policy in DA offices, the Attorney General does have the discretionary authority to act "in place of or with the district attorneys, or any of them, in instituting and conducting prosecutions for crime, and is invested, for that purpose, with all the rights, powers, and privileges of each and all of them." 5 M.R.S.A. § 199.

## DISCUSSION

The parties do not agree on the appropriate standard to determine whether Maine is Bloom's employer under Title VII. Plaintiff urges the Court to follow *Curran v. Portland Superintending School Committee*, 435 F.Supp. 1063 (D.Me.1977). That case involved a school employee who charged the city of Portland, the Portland Superintending School Committee, Committee members, the Superintendent of the Portland School System, and others involved in the administration of Portland schools with sex discrimination. *See id.* at 1069. The court denied the city of Portland's Motion to Dismiss, even though the city charter prevented Portland from becoming involved in the actual administration and management of the school system. *See id.* at 1073. Under Maine statute, the school committee and the school superintendent had the responsibility and authority for the employment of teachers and other personnel. *See id.* Nonetheless, the city appropriated funds for the school system, and these funds paid the salaries of school personnel. *See id.* The Court ruled that this funding removed any doubt "that the City is sufficiently involved in, and, in fact, necessary to, the total employment process that it must be considered plaintiff's employer for purposes of jurisdiction under Title VII." *Id.* (citations omitted).

Maine, on the other hand, argues that *Curran* adopted a standard that is now outmoded or incorrect. Maine calls on the Court to apply more recent standards adopted by the First Circuit in *Rivera–Vega v. ConAgra, Inc.*, 70 F.3d 153 (1st Cir.1995), and *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814 (1st Cir.1991). Both *Rivera–Vega* and *Rivas* involved a determination of joint employer status. These cases provide the following factors to determine such status: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." *Rivera–Vega*, 70 F.3d at 163 (applying the NLRA test). *See Rivas*, 929 F.2d at 820 n. 15 (explaining that the NLRA test has been applied to Title VII). In the specific context of public employers, Maine urges the Court to apply a Seventh Circuit test to deter-

mine whether a state or state agency is liable for employment discrimination. The Seventh Circuit test provides that "in suits against state entities, [the employer] is understood to mean the particular agency or part of the state apparatus that has actual hiring and firing responsibility." *Hearne v. Board of Education of the City of Chicago*, 185 F.3d 770, 777 (7th Cir.1999) (concluding that, under Title VII, plaintiff's employer was the city board of education, not the state, the governor, or the Illinois Educational Labor Relations Board). Under this test, Maine argues that its payment of Bloom's salary is not sufficient to make it Bloom's employer. *See Lee v. Mobile County Comm'n*, 954 F.Supp. 1540, 1545 (S.D.Ala. 1995) ("The [Defendant] County Commission had no authority to hire, fire, transfer, promote, discipline, set terms, conditions and privileges of employment, or train [Plaintiff]. The mere duty to pay [Plaintiff's] salary through the budgeting of funds ... does not mean that [Plaintiff] is deemed an employee of the ... County Commission").

The First Circuit does not appear to have distinguished between public and private employers in defining employer status under Title VII. The First Circuit has provided that employer status exists under Title VII where the party "exercise[s] control over an important aspect of employment." *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Assoc. of New England, Inc.*, 37 F.3d 12, 17 (1st Cir.1994) (finding "no significant difference between the definition of ... 'employer'" in Title VII and the ADA in the context of an ADA case). Although a multi-factor test, the joint employer test of *Rivera–Vega* is also, at its core, a "control" test.

Finding the *Curran* and the *Hearne* test too narrow, the Court adopts the *Carparts* test, using the *Rivera–Vega* factors, as the clearest expression of the law in this circuit regarding employer status under Title VII. Maine argues that the statute governing DA authority demonstrates that District Attorney Crook, not the state or the Attorney Generals' office, is Bloom's employer, and, therefore, Maine cannot be held liable under Title VII. While it is true that DAs can hire, fire, and set work policies for ADAs, the Attorney General and the Governor have the "ultimate power over changes in employer compensation" and Maine, through its legislative appropriations, also has "authority over the number of employees" that the DA can hire. Therefore, under the *Carparts* test, the Court cannot conclude at this stage of the proceedings that Maine is not Bloom's employer. *See Curran*, 435 F.Supp. at 1073 ("As only a motion to dismiss the complaint is presently before the Court, no factual determination of the presence or absence of an agency relationship between the individual defendants and the institutional defendants can be made. The relationship as alleged in the complaint, however, suffices to withstand dismissal at this stage.")[1]

For the foregoing reasons, Maine's Motion to Dismiss is DENIED.

*SO ORDERED.*

---

**1.** Typically, a determination of employer status should be resolved no earlier than the summary judgment stage, since such a determination is "a factual question." *See Rivera–Vega*, 70 F.3d at 163 (citation omitted). This case, like *Curran*, is not a typical case, since the authority of DAs and the Attorney General are delineated under Maine statutes, and any facts revealed in discovery in this case may have little bearing on the determination of whether Maine was or was not Bloom's employer. Nonetheless, the Court is not willing, at this stage of the proceedings, to dismiss Maine before there has been an opportunity to conduct discovery that may shed light on Maine's status.